***********
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Houser. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission hereby affirms the Opinion and Award with minor modifications.
 EVIDENTIARY MATTERS
1. At the hearing, plaintiff submitted a Record of Pharmacy Payments, which was admitted into the record, and marked as Plaintiff's Exhibit (1).
2. Also at the hearing, defendants submitted a Transcript of Plaintiff's Recorded Statement, which was admitted into the record, and marked as Defendants' Exhibit (1), and Plaintiff's Answers to Defendants' Interrogatories, which was admitted into the record, and marked as Defendants' Exhibit (2).
3. At the Full Commission hearing, the plaintiff filed a motion to include additional evidence into the record in the form of a letter to plaintiff from VOCMED, Inc., dated December 23, 2003. The Full Commission hereby admits said letter into evidence.
4. Also at the Full Commission hearing, the defendant filed a motion to require plaintiff to cooperate with vocational rehabilitation. The Full Commission hereby GRANTS defendant's motion requiring the plaintiff to cooperate with vocational rehabilitation.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties before the Deputy Commissioner are:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed at all times relevant herein between plaintiff-employee and defendant-employer.
3. Defendant-employer was insured by Key Risk Management Services, Inc. at all times relevant herein.
4. On the relevant dates herein, plaintiff's average weekly wage was $535.00, yielding a compensation rate of $356.01.
5. At the hearing, the parties agreed that Industrial Commission Forms 18, 19, 22, 61, 60, 33 and 33R and all Orders and Motions contained in the Industrial Commission file would be entered into the record. Also at the hearing, the parties submitted two Notebooks of Medical Records, which were admitted into the record, and marked collectively as Stipulated Exhibit (2).
6. The issues to be determined are as follows:
a. whether plaintiff suffers from post-traumatic stress disorder or any other disabling disorder due to her compensable work-related injury of 4 August 1997;
b. whether plaintiff is permanently and totally disabled due to post-traumatic stress disorder or other mental illness due to her compensable work-related injury of 4 August 1997 or due to her pre-existing conditions, i.e. age, inexperience, lack of education, transferable skills, and other health problems;
c. whether the medical treatment provided by Dr. Andrew Proffer is reasonably related to plaintiff's compensable work-related injury and whether the treatment provided tended to effect a cure, lessen the period of disability or give relief, and;
d. what benefits, if any, is plaintiff entitled to under the Workers' Compensation Act.
 ***********
Based upon the evidence of record, the undersigned enters the following:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was forty-five (45) years old. Plaintiff completed the tenth grade. She earned a GED in 1985 and received a degree in cosmetology.
2. Plaintiff's work history includes jobs as a cosmetologist and in convenience stores. Plaintiff's employment with defendant-employer began in November 1995, as the manager of the store located on Kivett Drive in High Point. In that capacity, plaintiff's duties included scheduling other employees, hiring and firing employees, filling shifts for other employees and controlling inventory. Plaintiff's job as store manager required her to focus and concentrate on all aspects of the store.
3. On 4 August 1997, there was a robbery at the Kivett Drive store. During the robbery, plaintiff, a co-worker and customers who in the store were forced into a restroom. While in the restroom, items from plaintiff's purse were taken by the robber. Those items included plaintiff's driver's license, and her checkbook, which contained her name and address.
4. At the hearing, plaintiff testified that following the robbery she became terrified that the robber would come to her house and harm her. Additionally, subsequent to the 4 August 1997 incident, plaintiff began to experience nightmares, flashbacks, withdrawal, irritability, hyper-vigilance, poor concentration, depression, feelings of overwhelming fear, anxiety, intrusive thoughts, suicidal and homicidal ideations and problems sleeping.
5. Initially defendants disputed the compensability of this claim. However, after the deposition of Dr. Smith on 30 September 1998, defendants accepted the compensability of the 4 August 1997 incident through the filing of an Industrial Commission Form 60. Pursuant to the Form 60, plaintiff began receiving ongoing total disability compensation and has continued to receive benefits since that time. On 8 February 2002, defendants filed an Industrial Commission Form 33 Request for Hearing, asserting that plaintiff was no longer disabled as the result of the robbery.
6. Plaintiff initially sought medical treatment at Moses Cone Hospital Emergency Room, but was not seen there by a healthcare provider due to her inability to endure the wait. Plaintiff then traveled to West Virginia where parents and her extended family lived. Plaintiff believed that going to West Virginia would keep her safe because the robber only had information regarding her Greensboro home address. While in West Virginia, plaintiff was admitted to Princeton Community Hospital on 6 August 1997, where she received treatment for adjustment disorder with mixed emotional features. Plaintiff remained in that facility until 9 August 1997.
7. Subsequent to her release from Princeton Community Hospital, plaintiff returned to Greensboro where she was admitted to Charter Hospital on 18 August 1997. During her stay in Charter Hospital, plaintiff was treated by Dr. Douglas Smith, who diagnosed her as having Post Traumatic Stress Disorder, hereinafter PTSD. Dr. Smith found no underlying pre-existing mental or personality disorders that could have contributed to plaintiff's PTSD. Dr. Smith has treated plaintiff regularly from 1997 through the time of the hearing, and is her authorized treating psychiatrist. Plaintiff has also received treatment from Dr. Andrew Proffer, a psychotherapist. Both Dr. Smith and Dr. Proffer have opined that plaintiff is able to work under certain conditions due to her psychological condition. Neither physician has released plaintiff to full duty, or approved any full or light duty position.
8. Dr. Robert Barth was retained by defendants and reviewed plaintiff's medical records. Based upon that review, Dr. Barth opined that plaintiff did not have PTSD, but possibly had some type of mental illnesses. Dr. Barth has not met or examined plaintiff, and conceded that his report was more of an assessment of the treatment provided by her authorized treating physicians than an assessment of plaintiff. Given the nature and basis of Dr. Barth's conclusion, his opinion that plaintiff does not have PTSD is not given weight.
9. Plaintiff was also seen by Dr. Robert Rollins, an expert in forensic psychiatry, for two independent medical evaluations. Dr. Rollins first met with plaintiff on 17 June 1998, at which time he noted that plaintiff was significantly distressed psychologically and that her symptoms were consistent with PTSD. At that time, Dr. Rollins opined that plaintiff's symptoms could have resulted from the trauma of the robbery, or from a pre-existing problem that was activated by the robbery. Following his second evaluation of plaintiff, Dr. Rollins opined that she was magnifying her symptoms, and expressed his acceptance of Dr. Barth's belief that plaintiff's symptoms were consistent with a mental health disorder not related to her work. Given the nature and basis of Dr. Rollins' medical conclusions, his opinions are given less weight than those of Dr. Smith and Dr. Proffer.
10. At the hearing, plaintiff testified that she continued to experience flashbacks, paranoia, poor memory and concentration, the inability to complete tasks, and panic attacks. Plaintiff also testified regarding her fear of open spaces, fear of large crowds and her tendency to be overly apologetic for things for which she is not to blame.
11. The credible evidence of record supports a finding that plaintiff's PTSD and other psychological problems, including panic attacks, agoraphobia, generalized anxiety, social phobia and personality disorder did not exist prior to 4 August 1997.
12. On 4 August 1997, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer. As the direct and natural result of, and causally related to her 4 August 1997 injury by accident, plaintiff developed post traumatic stress disorder and her other psychological problems, including panic attacks, agoraphobia, generalized anxiety, social phobia and personality disorder.
13. Despite plaintiff's efforts with vocational rehabilitation, at the time of the hearing, no position had been offered to plaintiff meeting the work restrictions and requirements as suggested by plaintiff's authorized treating physicians.
14. As the result of her 4 August 1997 injury by accident and related psychological problems, plaintiff is incapable of any earning wages in her former position with defendant-employer or in any other employment since 5 August 1997. However, there is insufficient evidence of record upon which to find that plaintiff is permanently and totally disabled.
15. The psychological and medical treatment provided to plaintiff by Dr. Andrew Proffer is reasonably related to her after 4 August 1997 injury by accident and is hereby approved.
16. On 22 June 1998, plaintiff traveled to Raleigh for her first evaluation with Dr. Rollins. Plaintiff lives approximately 71.91 miles from Dr. Rollins' office. Plaintiff is entitled to receive compensation for the mileage to and from Dr. Rollins' home at the rate of $.25 per mile.
17. Plaintiff has had to use her own resources to provide payment for medicines prescribed by her authorized treating physician, Dr. Smith. These out-of-pocket medical expenses are documented in Plaintiff's Exhibit (1).
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 4 August 1997, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6). As the direct and natural result of, and causally related to her 4 August 1997 injury by accident, plaintiff developed post traumatic stress disorder and her other psychological problems, including panic attacks, agoraphobia, generalized anxiety, social phobia and personality disorder. Id.
2. There is insufficient evidence of record to support a conclusion that plaintiff is permanently and totally disabled. N.C. Gen. Stat. §§ 97-2(9); 97-29. However, as the result of her 4 August 1997 injury by accident and related psychological conditions, plaintiff is entitled to have defendants continue to pay her ongoing total disability compensation at the rate of $356.01 per week until she returns to work, or further order of the Commission. Id.
3. As the result of her 4 August 1997 injury by accident and related psychological conditions, plaintiff is entitled to have defendants pay for all related medical expenses incurred, or to be incurred, including treatment provided by Dr. Andrew Proffer, $35.96 for travel to and from evaluations by Dr. Rollins, and $648.82 for medications prescribed by Dr. Smith. Moreover, a North Carolina Industrial Commission nurse shall be appointed to this case to observe and to determine whether a state vocational rehabilitation counselor can provide any further assistance to the plaintiff. N.C. Gen. Stat. §§ 97-25; 97-25.1.
4. The plaintiff shall comply with any and all vocational rehabilitation efforts, including but not limited to appointments with VOCMED, Inc., the North Carolina Industrial Commission nurse and state vocational rehabilitation counselor. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Defendants shall continue to pay to plaintiff ongoing total disability compensation at the rate of $356.01 per week until she returns to work or further Order of the Commission.
2. Defendants shall pay for all related medical expenses incurred, or to be incurred by plaintiff as the result of her 4 August 1997 injury by accident and related psychological conditions, including treatment provided by Dr. Andrew Proffer, $35.96 for travel to and from evaluations by Dr. Rollins, and $648.82 for medications prescribed by Dr. Smith. Moreover, a North Carolina Industrial Commission nurse shall be appointed to this case to observe and to determine whether a state vocational rehabilitation counselor can provide any further assistance to the plaintiff.
3. The plaintiff shall comply with any and all vocational rehabilitation efforts, including but not limited to appointment with VOCMED, Inc., the North Carolina Industrial Commission nurse and state vocational rehabilitation counselor.
4. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded herein is approved for counsel for plaintiff who shall receive every forth check directly.
5. Defendants shall pay the costs.
 S/_____________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER